**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CASE NO. 0:26-cv-61522-MD**

**LISBEL S. CARDOSO PARDILLO,**

Petitioner,

**v.**

**MARKWAYNE MULLIN, SECRETARY, U.S, et al.,**

Respondents,

_____/

**RESPONSE TO ORDER TO SHOW CAUSE**

Respondent[1] hereby responds to the Court's Order to Show Cause why the Petition for Writ of Habeas Corpus should not be granted. Specifically, this Court ordered: "Respondents shall file a response to the Petition, including as to why this Court should not order a bond hearing to be held for Petitioner within seven days, in light of the recent ruling by the Eleventh Circuit Court of Appeals in *Hernandez Alvarez v. Warden, Federal Detention Center Miami*, No. 25-14065, --- F.4th ----, 2026 WL 1243395 (11th Cir. May 6, 2026)." [DE 3]

**FACTUAL BACKGROUND**

Lisbel Sinecio Cardoso Pardillo (Petitioner) is a native and citizen of Cuba. Exh. A, Form I-213, Record of Deportable/Inadmissible Alien (Form I-213), dated August 31, 2025. On January 23, 2024,

---

[1] A writ of habeas corpus must "be directed to the person having custody of the person detained." 28 USC § 2243. In cases involving present physical confinement, the Supreme Court reaffirmed in *Rumsfeld v. Padilla*, 542 U.S. 426 (2004), that "the immediate custodian, not a supervisory official who exercises legal control, is the proper respondent." *Rumsfeld v. Padilla*, 542 U.S. 426, 439 (2004). Petitioner is detained at Broward Transitional Center.  Accordingly, the Warden of Broward Transitional Center is the proper Respondent in this case, and all other Respondents should be dismissed.

1

Petitioner applied for admission to the United States requesting asylum. *See* Exh. B, NTA. Petitioner was not in possession of any valid entry documents to enter or reside in the United States. *Id.*

On the same date, ICE/ERO paroled Petitioner into the U.S. and issued Petitioner a Notice to Appear (NTA), (Form I-862), placing him in removal proceedings in accordance with § 240 of the INA; charging inadmissibility pursuant to § 212(a)(7)(A)(i)(I) of the INA as amended, as an immigrant who, at the time of application for admission, is not in possession of a valid unexpired immigrant visa, re-entry permit, border crossing card, or other valid entry document required by the Act, and valid unexpired passport, or other suitable travel document, or document of identity and nationality as required under the regulations issued by the Attorney General under § 211(a) of the INA. Exh. B; Exh. A.

On January 31, 2025, Petitioner filed an application to register lawful permanent residence (I-485), which remains pending. Exh. A. On April 9, 2025, an immigration judge terminated Petitioner's removal proceedings due to his eligibility to adjust status under the Cuban Adjustment Act through USCIS. Exh. C, IJO Termination.

On August 31, 2025, Petitioner was encountered by immigration officials at the Turner Guilford Knight Correctional Center, in Miami-Dade County after being arrested for driving under the influence (DIU). Exh. A. The Department of Homeland Security (DHS) issued Petitioner another NTA charging inadmissibility under section § 212(a)(7)(A)(i)(I) of the INA. Exh. D, NTA dated August 31, 2025. On February 11, 2026, Petitioner was transferred to immigration custody. Exh. E, Detention History.

On May 11, 2026, an immigration judge denied Petitioner's motion to terminate because USCIS can adjudicate his application regardless of whether the Petitioner is in removal proceedings. Exh. F, IJO Denial.

Petitioner is currently detained under 8 U.S.C. §1225 at the Broward Transitional Center pending completion of removal proceedings. Exh. E, Detention History. Petitioner's next immigration court hearing is scheduled for June 16, 2026. Exh. G, NOH.

## ARGUMENT

### I.      Petitioner is Lawfully Detained as an Arriving Alien.

"Congress has established the requirements for admission of aliens that arrive at the border without authorization to enter." *Lopez v. Sessions*, Case No. 18-CV-4189 (RWS), 2018 WL 2932726, at *4 (S.D.N.Y. June 12, 2018) (citing 8 U.S.C. § 1225). Pursuant to § 1225(a), "aliens who arrive at the nation's borders" without authorization to enter this country "are deemed 'applicants for admission,' and must be inspected by an immigration official before being granted admission." *Id*. (citing 8 U.S.C. § 1225(a)(1), (3)). Under 8 U.S.C. § 1225(b), "if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229(a) of this title [i.e., a removal proceeding]." *Id*. (quoting 8 U.S.C. § 1225(b)(2) (A)) (brackets in original).

By its very definition, the term "applicant for admission" includes two categories of aliens: (1) arriving aliens, and (2) aliens present without admission. *See Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 140 (2020) (explaining that "an alien who tries to enter the country illegally is treated as an 'applicant for admission'"); *Matter of Lemus*, 25 I&N Dec. 734, 743 (BIA 2012) ("Congress has defined the concept of an 'applicant for admission' in an unconventional sense, to include not just those who are expressly seeking permission to enter, but also those who are present in this country without having formally requested or received such permission . . . ."); *Matter of E-R-M- & L-R-M-*, 25 I&N Dec. 520, 523 (BIA 2011) (stating that "the broad category of applicants for admission . . . includes, *inter alia*, any alien present in the United States who has not been admitted"). An arriving alien is defined, in pertinent

part, as "an applicant for admission coming or attempting to come into the United States at a port-of-entry [("POE")] . . . ." 8 C.F.R. §§ 1.2, 1001.1(q). Here, the Petitioner is an arriving alien. Exh. B, NTA.

An arriving alien is subject to mandatory detention under **§** 1225(b), and "an immigration judge *'may not'* conduct a bond hearing to determine whether [the] arriving alien should be released into the United States during removal proceedings." *Lopez*, 2018 WL 2932726, at *4 (S.D.N.Y. June 12, 2018) (quoting 8 C.F.R. § 1003.19(h)(2)(i)(B)) (emphasis added).

Arriving aliens, such as Petitioner, who are detained pursuant to § 1225(b)(2)(A) may only be released from custody pursuant to DHS's discretionary parole authority. *See* 8 U.S.C. § 1182(d)(5)(A). Under Section 1182(d)(5)(A), DHS "may ... in [its] discretion parole into the United States temporarily under such conditions as [it] may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States[.]" *Id*. Importantly, however, DHS's discretionary parole of an alien "shall not be regarded as an admission of the alien and when the purposes of such parole shall . . .have been served the alien shall forthwith return or be returned to the custody from which he was paroled[.]" *Id*. "[T]hereafter[,]" a formerly paroled alien's, such as Petitioner, "case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." *Id*.

Petitioner here is an "arriving alien" subject to the removal and detention provisions in 8 U.S.C. § 1225(b)(2). Arriving aliens are only afforded that process authorized by Congress, and they lack a statutory or due process right to a bond hearing.  Petitioner no longer has a valid parole, thereby placing him in the same position as any "arriving alien," contemplated by 8 U.S.C. § 1225 and he is subject to the statute's mandatory removal and detention provisions. *See Buenrostro-Mendez v. Bondi,* No. 25-20496, 25-40701, ___F. 4th ___, 2026 WL 323330 (5th Cir. Feb. 6 2026) (holding that the noncitizen petitioners in removal proceedings were subject to mandatory detention under 28 U.S.C. § 1225(b)(2) because they

4

were present in the United States without being admitted or paroled, despite having entered illegally many years ago); *Morales v. Noem*, et al., Case No. 25-CV-62598--SINGHAL, ____F.Supp.3d___, 2026 WL 236307 (S.D. Fla. Jan. 29, 2026))(same); *Perez Morales v. Noem*, No. 26-60251-CIV DIMITROULEAS, ECF No. 15 (S.D. Fla. Feb. 9, 2026) (same, adopting the analysis of the majority opinion in *Buenrostro*); *Mokanu v. Warden, Federal Detention Center Miami*, No. 25-24121-CIV-ARTAU, ____F.Supp.3d___, 2026 WL 472294 (S.D. Fla. Feb. 19, 2026) (holding that 8 USC 1252(g) prohibits the Court in a habeas proceeding from reviewing the denial of bond to a person present without admission or parole who is detained pursuant to 8 U.S.C. § 1225, and, on the merits, finding that petitioner, an arriving alien who had been present in the country for years on humanitarian parole, was an applicant for admission and subject to detention under 8 USC 1225(b)(2)). In *Buenrostro-Mendez*, the Fifth Circuit Court of Appeals recognized that presence without admission renders an individual like Petitioner both an "applicant for admission" and "seeking admission" under 8 U.S.C. § 1225(b)(2) and therefore subject to mandatory detention--regardless of how much time the individual has been present in the United States. *Buenrostro-Mendez*, at *4-9.[2]

The Fifth Circuit's decision in *Buenrostro-Mendez* is consistent not only with the plain language of § 1225(b)(2), but also with the Supreme Court's decision in *Jennings v. Rodriguez,* 583 U.S. 281 (2018), and subsequent caselaw post *Jennings*. Specifically, in *Jennings*, the Supreme Court explained that § 1225(b) applies to all applicants for admission, noting that the language of § 1225(b)(2) is "quite clear" and "unequivocally mandate[s]" detention. 583 U.S. at 300, 303.

---

[2] Respondents acknowledge that in a similar case involving an alien that entered as an arriving alien, the Court denied habeas relief.  *See Lobaina v. Warden*, No. 26-cv-21362-JB, (Mar. 12, 2026) (concluding that Petitioner is an arriving alien and as such he is properly detained under 8 U.S.C. § 1225(b)).

Additionally, in *Matter of Q. Li*, 29 I&N Dec. 66 (BIA 2025), the Board of Immigration Appeals ("BIA") held that an alien who unlawfully entered the United States between ports of entry, was arrested and detained without a warrant while arriving, and was previously released from DHS custody pursuant to an 8 U.S.C. § 1182(d)(5)(A) parole is detained under § 1225(b) upon re-detention. 29 I&N Dec. at 70-71. This ongoing evolution of the law makes clear that all applicants for admission in various procedural postures are subject to detention under § 1225(b). *Cf. Niz-Chavez v. Garland*, 593 U.S. 155, 171 (2021) (stating that "no amount of policy-talk can overcome a plain statutory command"); *see generally Florida v. United States*, 660 F. Supp. 3d 1239, 1275 (N.D. Fla. 2023) (explaining that "the 1996 expansion of § 1225(b) to include illegal border crossers would make little sense if DHS retained discretion to apply § 1226(a) and release illegal border crossers whenever the agency saw fit"). *Florida's* conclusion "that § 1225(b)'s 'shall be detained' means what it says and . . . is a mandatory requirement . . . flows directly from *Jennings*." *Florida*, 660 F. Supp. 3d at 1273.

*Hernandez Alvarez v. Warden, Federal Detention Center, Miami*, 2026 WL 1243395 (11th Cir. May 6, 2026) does not apply to the instant case for three reasons. First, Petitioner is an "arriving alien" *and the petitioners in Hernandez Alvarez were never arriving aliens*, but had been classified as "applicants for admission" under this Administration's interpretation of the statute.

Petitioner's entry into the United States is also dissimilar from both petitioners in *Hernandez Alvarez*. On January 23, 2024, Petitioner applied for admission to the United States requesting asylum. Exh. A, Form I-213, Record of Deportable/Inadmissible Alien (Form I-213), dated August 31, 2025. Meaning that, Petitioner actively sought admission into the United States. Whereas, Hernandez Alvarez and Cerro Perez entered the United States undetected, were present in the United States without having been admitted or paroled, and their presence was discovered in the interior rather than at the border. *Hernandez Alvarez*, 2026 WL 1243395 at *1, 20.

Second, the Eleventh Circuit did not alter the detention authority for aliens present in the United States without having been admitted who are seeking admission after inspection by an immigration official. *Hernandez Alvarez*, 2026 WL 1243395 at *1 ("The text and statutory structure of the INA ... yield the conclusion that no bond detention generally applies to arriving aliens seeking lawful entry to the country, and not to aliens who are simply present here.").  Although the Court did not come to the conclusion as to who 8 U.S.C. § 1225(b)(2)(A) applied to, its analysis of § 1225, supports the conclusion that it does apply to Petitioner, that is, a narrower category of applicants for admission: i.e., those seeking lawful entry into the United States.  *Id.* at *5, 13-14.

The Eleventh Circuit concluded several times that section 1225 governs arriving aliens.  *Id.* at *14 ("The INA's text confirms that the two relevant sections on detention govern distinct classes of aliens: § 1225 applies to arriving aliens seeking entry at the border, whereas § 1226 applies to aliens unlawfully in the interior.").  "An alien seeking admission refers to an alien who is pursuing lawful entry into the United States after inspection and authorization by an immigration officer."  *Id.* at 7 (clean up).  Pertinently, section 1225(b)(2)(A) applies to people "seeking admission" and "*except for arriving aliens*" have available to them a bond redetermination hearing before an immigration judge."  *Id.* at 20.

Here, Petitioner is an arriving alien. Petitioner is also seeking admission into the United States under the Eleventh Circuit's analysis in *Hernandez Alvarez*.  By its very definition, the term "applicant for admission" includes two categories of aliens: (1) arriving aliens, and (2) aliens present without admission. *See Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 140 (2020) (explaining that "an alien who tries to enter the country illegally is treated as an 'applicant for admission'").

Again, Petitioner applied for admission to the United States on January 23, 2024. Exh. A, *Id.* at *8 ("[T]he ordinary meaning of "seeking," which, after all, requires taking an affirmative step or commencing some process...."); *see also* 8 U.S.C. § 1225(a)(1) (providing that aliens who arrive at the

nation's borders without authorization to enter this country "shall be deemed ... 'an applicant for admission.'"); 8 C.F.R. §§ 1.2, 1001.1(q) (defining an arriving alien as "an applicant for admission coming or attempting to come into the United States at a port-of-entry").  Pursuant to the Eleventh Circuit's interpretation of section 1225(b)(2)(A)'s "seeking admission," this Court should find that Petitioner does not fall into the class of aliens that *Hernandez Alvarez* provides a bond hearing for under section 1226.

And finally, time does not change the legal status of Petitioner. Petitioner was released on a parole valid until January 23, 2024. *See* Ex. A. Pursuant to 8 U.S.C. § 1182(d)(5)(A), once the purpose of parole has been served, "the alien shall forthwith return ... to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States."  Even though Petitioner was physically apprehended in the interior, his legal status has remained unchanged since 1995.  8 C.F.R. § 1.2 ("An arriving alien remains an arriving alien even if paroled pursuant to section 212(d)(5) of the Act, and even after any such parole is terminated or revoked.").  Section 1182 provides DHS the authority to detain Petitioner under § 1225(b) because Petitioner's legal status reverts back to when he presented at the border in 1995. 8 U.S.C. § 1182(d)(5)(A).

Therefore, in light of the Eleventh Circuit's decision in *Hernandez Alvarez v. Warden, Federal Detention Center, Miami*, 2026 WL 1243395 (11th Cir. May 6, 2026), this Court should deny the Petition.

### III.	Applicants for Admission May Only be Released from Detention on an 8 U.S.C. 1182(d)(5) Parole.

DHS has the exclusive authority to temporarily release on parole "any alien applying for admission to the United States" on a "case-by-case basis for urgent humanitarian reasons or significant public benefit." 8 U.S.C. § 1182(d)(5); *see* 8 C.F.R. § 212.5(b). In *Jennings*, the Supreme Court placed significance on the fact that § 1182(d)(5) is the specific provision that authorizes temporary release from detention under § 1225(b).  583 U.S. at 300.

8

Parole, like an admission, is a factual occurrence. *See Hing Sum*, 602 F.3d at 1098; *Matter of Roque-Izada*, 29 I&N Dec. 106 (BIA 2025) (treating whether an alien was paroled as a question of fact). The parole authority under 8 U.S.C. § 1182(d)(5) is "delegated solely to the Secretary of Homeland Security." *Matter of Castillo-Padilla*, 25 I&N Dec. 257, 261 (BIA 2010); *see* 8 C.F.R. § 212.5(a). Thus, neither the BIA nor immigration judges have authority to parole an alien into the United States under § 1182(d)(5). *Castillo-Padilla*, 25 I&N Dec. at 261; *see also Matter of Arrabally and Yerrabelly*, 25 I&N Dec. 771, 777 n.5 (BIA 2002) (indicating that "parole authority [under 8 U.S.C. § 1182(d)(5)] is now exercised exclusively by the DHS" and "reference to the Attorney General in [8 U.S.C. § 1182(d)(5)] is thus deemed to refer to the Secretary of Homeland Security").

Lastly, because DHS has exclusive jurisdiction to parole an alien into the United States, the way DHS exercises its parole authority may not be reviewed by an immigration judge or the BIA. *Castillo-Padilla*, 25 I&N Dec. at 261; *see Matter of Castellon*, 17 I&N Dec. 616, 620 (BIA 1981) (noting that the BIA does not have authority to review the way DHS exercises its parole authority).

### IV.     Applicants for Admission in 8 U.S.C. § 1229a Removal Proceedings Are Subject to Mandatory Detention Pursuant to 8 U.S.C. § 1225(b)(2)(A).

Arriving aliens are applicants for admission and may be removed from the United States by expedited removal procedures under 8 U.S.C. § 1225(b)(1) or removal proceedings before an immigration judge under 8 U.S.C. § 1229a. *See* 8 U.S.C §§ 1225(b)(1), (b)(2)(A); *Jennings,* 583 U.S. at 287 (describing how "applicants for admission fall into one of two categories, those covered by § 1225(b)(1) and those covered by § 1225(b)(2)").

Petitioner is currently in § 1229a removal proceedings and is subject to mandatory detention under § 1225(b)(2)(A). Under 8 U.S.C. § 1225(b)(2)(A), "an alien who is an applicant for admission" "*shall be detained* for a proceeding under [8 U.S.C. § 1229a]" "if the examining immigration officer determines

that [the] alien seeking admission is not clearly and beyond a doubt entitled to be admitted." 8 U.S.C. § 1225(b)(2)(A) (emphasis added); 8 C.F.R. § 235.3(b)(3) (providing that an alien placed into § 1229a removal proceedings in lieu of expedited removal proceedings under 8 U.S.C. § 1225 "shall be detained" pursuant to § 1225(b)(2)). As the Supreme Court observed in *Jennings*, nothing in § 1225(b)(2)(A) "says anything whatsoever about bond hearings." 583 U.S. at 297. Further, there is no textual basis for arguing that § 1225(b)(2)(A) applies only to arriving aliens as no provision therein refers to "arriving aliens," or limits that paragraph to arriving aliens. Where Congress means for a rule to apply only to "arriving aliens," it uses that specific term of art or similar phrasing. *See, e.g.*, 8 U.S.C. §§ 1182(a)(9)(A)(i), 1225(c)(1).

> **V.      Section 1226 Does not Impact the Governing Detention Authority Regarding Applicants for Admission in Removal Proceedings.**

Section 1226(a) is the applicable detention authority for aliens who have been admitted and are subject to removal proceedings under § 1229, and it does not impact the directive in § 1225(b)(2)(A) that "if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceedings under [8 U.S.C. § 1229a]." 8 U.S.C. § 1225(b)(2)(A). Section § 1226(a) "applies to aliens already present in the United States" and "creates a default rule for those aliens by permitting—but not requiring—the [Secretary] to issue warrants for their arrest and detention pending removal proceedings." *Jennings*, 583 U.S. at 289, 303; *Q. Li*, 29 I&N Dec. at 70; *see also M-S-*, 27 I&N Dec. at 516 (describing 8 U.S.C. § 1226(a) as a "permissive" detention authority separate from the "mandatory" detention authority under 8 U.S.C. § 1225). As the Fifth Circuit observed in *Buenrostro-Mendez*, § 1226(a) "does work independent from § 1225(b)(2)(A) because only § 1226(a) applies to admitted aliens who overstay their visas, become deportable on many different grounds, or were admitted erroneously due to fraud or some other error." *Buenrostro-Mendez*, at *7.

**VI.       Title 8, United States Code, Section 1252(g) Bars Review of Petitioner's Claims.**

Petitioner is essentially asking the Court to prohibit the commencement of removal proceedings, but the Court lacks jurisdiction to grant such relief.  Section 1252(g) of Title 8, United States Code, categorically bars jurisdiction over "*any* cause or claim by or on behalf of any alien *arising from* the decision or action by the [Secretary of Homeland Security] to *commence proceedings*, adjudicate cases, or execute removal orders against any alien." 8 U.S.C. § 1252(g) (emphasis added). The Secretary of Homeland Security's decision to *commence removal proceedings*, including the decision to detain an alien pending such removal proceedings, squarely falls within this jurisdiction bar.

In other words, detention clearly "aris[es] from" the decision to commence removal proceedings against an alien. *See Mokanu*, No. 25-24121-ARTAU, ____F.Supp.3d___, 2026 WL 472294, at *5 (S.D. Fla. Feb. 19, 2026) ("by seeking release from custody "pending removal proceedings," the "basis of [the petittioner's] claim" is a challenge to the decision to commence removal proceedings against him, which is plainly barred by § 1252(g)); *Alvarez v. ICE*, 818 F.3d 1194, 1203 (11th Cir. 2016) ("By its plain terms, [§ 1252(g)] bars us from questioning ICE's discretionary decisions to commence removal" and also to review "ICE's decision to take [plaintiff] into custody and to detain him during removal proceedings"); *Tazu v. Att'y Gen. U.S.*, 975 F.3d 292, 298 (3d Cir. 2020) ("The text of § 1252(g)... strips us of jurisdiction to review... [T]o perform or complete a removal, the [Secretary of Homeland Security] must exercise [her] discretionary power to detain an alien for a few days. That detention does not fall within some other part of the deportation process.") (cleaned up) (internal quotations and citations omitted); *Valencia-Mejia v. United States*, No. CV 08–2943 CAS (PJWx), 2008 WL 4286979, at *4 (C.D. Cal. Sept. 15, 2008) ("The decision to detain plaintiff until his hearing before the Immigration Judge *arose from* this decision to commence proceedings[.]") (emphasis added); *Wang v. United States*, No. CV 10-0389 SVW (RCx), 2010 WL 11463156, at *6 (C.D. Cal. Aug. 18, 2010) (citing *Khorrami v. Rolince*, 493 F. Supp. 2d 1061 (N.D.

Ill. 2007) ("[Plaintiff's] detention necessarily *arises from* the decision to initiate removal proceedings against him.") (emphasis added); *Herrera-Correra v. United States*, No. CV 08-2941 DSF (JCx), 2008 WL 11336833, at \*3 (C.D. Cal. Sept. 11, 2008) (citing *Sissoko v. Rocha*, 509 F.3d 947, 949 (9th Cir. 2007) ("The [Secretary] may arrest the alien against whom proceedings are commenced and detain that individual until the conclusion of those proceedings. ... Thus, an alien's detention throughout this process *arises from* the [Secretary]'s decision to commence proceedings[]" and review of claims arising from such detention is barred under § 1252(g)) (emphasis added). Put in the Supreme Court's words, detention pending removal is a "specification" of the decision to commence proceedings. *See Reno v. Am.-Arab Anti-Discrimination Comm.* ("*AADC*"), 525 U.S. 471, 485 n.9 (1999) ("§ 1252(g) covers" a "specification of the decision to 'commence proceedings'").

## VII.   Petitioner Failed to Exhaust Administrative Remedies Available to Him.

In the alternative, the Court should dismiss the petition for writ of habeas corpus as Petitioner has failed to exhaust administrative remedies. Generally, a habeas petitioner must exhaust administrative remedies before seeking federal court intervention. *See Romero v. Broward Transitional Ctr.,* No. 26-60405-CIV SINGHAL, 2026 WL 1053240, at \*1 n.2 (S.D. Fla. Apr. 16, 2026) (finding failure to exhaust administrative remedies futile and therefore excused); *Sims v. Warden, FCC Coleman- Medium*, No. 5:25-CV-674 CHAPPELL, 2026 WL 1077675, at \*1 (M.D. Fla. Apr. 21, 2026) ("Although exhaustion of administrative remedies is not a jurisdictional requirement in a § 2241 proceeding, 'that does not mean that courts may disregard a failure to exhaust and grant relief on the merits if the respondent properly asserts the defense.'") (quoting *Santiago-Lugo v. Warden*, 785 F.3d 467, 475 (11th Cir. 2015)); *Bohorquez-Valencia v. Ripa*, No. 3:25-CV-1383 HOWARD, 2026 WL 662980, at \*2 (M.D. Fla. Mar. 10, 2026) ("A petitioner must exhaust all available administrative remedies before filing a § 2241 petition in federal court.") (citing *Santiago-Lugo*, 785 F.3d at 475).

"[E]xhaustion promotes efficiency, including by encouraging parties to resolve their disputes without litigation." *Id*. at 417-18 (citing *Jones v. Bock*, 549 U.S. 199, 219, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007); and *McCarthy v. Madigan*, 503 U.S. 140, 145, 112 S.Ct. 1081, 117 L.Ed.2d 291 (1992)).

Here, Petitioner has not pursued administrative relief available to him. To date, Petitioner has not filed a custody redetermination request. Instead, he seeks relief from this Court. DE 1. Therefore, Petitioner's failure to pursue available administrative remedies is dispositive, and the Petition should be dismissed.

### III.   Petitioner's Claim of a Pending Immigration Benefit Application is Unavailing.

Moreover, contrary to Petitioner's argument, a pending Cuban Adjustment Act application does not confer an immigration benefit or otherwise bar Respondent from detaining Petitioner during removal proceedings. Further, Petitioner does not cite any caselaw or statute that precludes Respondent from detaining Petitioner because he has a pending Cuban Adjustment Act application. "It is the petitioner's burden to establish his right to habeas relief[,] and he must prove all facts necessary to show a constitutional violation." *Blankenship v. Hall*, 542 F.3d 1253, 1270 (11th Cir. 2008) (citation omitted). Rather, Petitioner merely cites *Matter of Yauri*, 25 I&N Dec. 103 (BIA 2009) for the proposition: "USCIS retains jurisdiction over adjustment applications filed by arriving aliens." [DE 1 at 9]. *Matter of Yauri* does not suggest that immigration courts are without jurisdiction to adjudicate removal proceedings while an adjustment application is pending. On the contrary, *Matter of Yauri* acknowledges that USCIS maintains exclusive jurisdiction to adjudicate adjustment applications filed by arriving aliens. *Id*. at 110.  It then goes onto recognize that the BIA and immigration judges:

> have not been granted authority to reopen the proceedings of respondents who are under a
> final administrative order of removal to pursue matters that could affect their removability
> if [BIA and immigration courts] have no jurisdiction over such matters. This is especially

so where reopening is sought simply as a mechanism to stay a final order of removal while the collateral matter is being resolved.

*Id*. at 110. In other words, even the case cited by Petitioner, does not further any argument that a pending adjustment application has any effect on removal proceedings.

<strong>CONCLUSION</strong>

Based upon the foregoing, the Petition should be dismissed as Petitioner failed to exhaust administrative remedies available to him.

Respectfully submitted,

**JASON A. REDING QUIÑONES**
**UNITED STATES ATTORNEY**

By:  */s/ MaryEllen M. Farrell Gieseler*
MaryEllen M. Farrell Gieseler
Assistant United States Attorney
Florida Bar No. 95571
U.S. Attorney's Office
500 S. Australian Avenue, Suite 400
West Palm Beach, Florida 33401
Tel:  (561)209-1007
Email: MaryEllen.Gieseler@usdoj.gov

*Attorney for Respondents*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 5th day of June, 2026, I electronically filed the foregoing

document with the Clerk of Court using CM/ECF

By:  <u>/s/ MaryEllen M. Farrell Gieseler</u>
Assistant U.S. Attorney